IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIMINAL NO.: WDQ-14-0448 |
| RICHARD ALAN BLANK | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Richard Alan Blank is charged with two counts of production of child pornography[1] and possession of child pornography.[2]  ECF No. 4.  A motions hearing was held on June 29, 2015.  Pending were Blank's motions: (1) to suppress evidence seized at Blank's Maryland residence (ECF No. 32), to suppress evidence seized at Blank's cabin in West Virginia (ECF No. 33), to suppress cell phone evidence (ECF No. 34), to suppress Blank's DNA sample (ECF No. 37), to exclude photos and other evidence obtained from Blank's cell phone (ECF No. 60), to admit evidence under Federal Rule of Evidence 412 (ECF No. 67), to exclude jail recordings (ECF No. 83), to dismiss the indictment for lack of jurisdiction (ECF No. 84), to dismiss the indictment based on lost or destroyed evidence (ECF No. 86), and to exclude pornographic

---

[1] 18 U.S.C. § 2251(a).

[2] 18 U.S.C. § 2252A(a)(5)(B).

videos and magazines (ECF No. 88).[3]  Also pending were the
Government's motions to introduce evidence under Federal Rule of
Evidence 404(b) (ECF No. 62) and to preclude cross examination
on the victim's sexual and mental health history (ECF No. 65).[4]

For the following reasons, the Court denied the motions to
suppress evidence from Blank's Maryland residence, suppress
evidence from the West Virginia cabin, suppress Blank's DNA
sample, suppress evidence from Blank's cell phone, admit
evidence under Rule 412, exclude jail recordings, dismiss for
lack of jurisdiction, dismiss based on destroyed evidence, and
exclude pornographic videos and magazines.  The Court deferred
until trial ruling on the motion to exclude photos and other
evidence obtained from Blank's cell phone to give the Government
an opportunity to lay a proper foundation.  The Court granted
the motion to preclude cross examination on the victim's sexual
and mental health history.  Finally, the Court granted in part
and denied in part the Government's motion to admit evidence
under Rule 404(b).

---

[3] Blank also moved to suppress his statements to the police (ECF
Nos. 17, 31), to exclude photographs of text messages (ECF No.
87), and to exclude allegations of prior sexual assaults and
domestic violence (ECF No. 89).  Because the Government does not
now intend to introduce any of this evidence, see ECF Nos. 80,
90, the Court deferred ruling on these motions.

[4] At the hearing, the Government withdrew its motion to permit
Jane Doe to attend trial (ECF No. 66).

I.   Background[5]

In April 2014, 15-year-old Jane Doe moved from Iowa to live with her mother[6] and step-father, Richard Alan Blank, in Maryland. *See* ECF No. 36-2 at 3 (state search warrant affidavit). In May 2014, detectives with the Allegany County Combined Criminal Investigations ("C3I") task force received a report that Jane Doe had texted her friend in Iowa about having sex with Blank. *See* ECF No. 36-1 at 7 (state search warrant affidavit). On May 7, 2014, Detective Harold Dixon of C3I investigated the report; however, Blank and Jane Doe denied that any sexual contact had occurred. *See id*. Jane Doe "said that the reason she sent the false texts was because she felt lonely and was looking for attention from her friends in Iowa."[7] ECF

---

[5] The facts are from the search warrant affidavits (ECF No. 36), the parties' numerous briefs, and the evidentiary hearing. To produce this opinion as soon as practicable, the hearing testimony is summarized from the Court's notes rather than waiting for an official transcript.

[6] At the hearing, Elizabeth Blank, now remarried and known as Elizabeth Grey, informed the Court that she and Blank were married from 2003 to 2004. Although they were divorced from 2004 to 2014, they continued to live together as a couple. They remarried on May 11, 2014. After Blank's arrest, Ms. Blank sought a divorce. For clarity, Elizabeth Grey, nee Blank, will be referred to as "Ms. Blank" throughout this opinion.

[7] Jane Doe later stated that "during and since [the sexual] activity had occurred [Blank] ha[d] made comments which made [Jane Doe] believe she was responsible and at fault and had told her that she could not tell anyone." ECF No. 36-2 at 3. After the May 7, 2014 interview, Blank allegedly "made Jane Doe text

No. 86 at 2.  The investigators had Jane Doe prepare a written statement, and, on May 14, 2014, the investigation was closed for lack of substantiation.  *See id.*

On June 2, 2014, Jane Doe's mother and Jane Doe went to the Maryland State Police Barracks in LaVale, Maryland to report that Jane Doe was being sexually abused by Blank.  ECF No. 36-1 at 8.  Jane Doe's mother asserted that she had become suspicious of Blank following the May 7, 2014 interview.  *Id.*  On May 30, 2014, she had placed a hidden camera in Jane Doe's bedroom.  *Id.* When Jane Doe's mother reviewed the video, it showed Jane Doe and Blank having sex, as well as Blank taking nude pictures of Jane Doe with his cell phone.  *Id.*

C3I investigators interviewed Jane Doe "regarding the contents of the tape and Blank's sexual abuse."  ECF No. 36-1 at 8.  Jane Doe relayed what had happened on the tape and detailed eight prior occurrences of sexual abuse starting on May 5, 2014. *Id.* at 8-10.  On June 2, 2014, "a traffic stop was conducted involving [Blank] just outside his house," and Blank was arrested.  ECF No. 41 at 4.  "At that time, . . . Detective Sergeant Cook located and seized [Blank's] cell phone from inside the Defendant's truck on the center console.  The

---

everyone she told that she and Blank had sex and inform them that she had lied.  After that, Blank did not allow Jane Doe to use her phone or the internet."  ECF No. 36-1 at 7.

Defendant was transported to the Cumberland Police Department.
With the Defendant's permission, Detective Sergeant Cook drove
the truck from the street and parked it in the Defendant's
driveway." *Id*.

The detectives did not search the phone or its contents at
the time of the arrest. *See* ECF No. 36-2 at 5.  Detective Dixon
immediately applied for search warrants to search the Blanks'
home and the contents of the phone. *Id*.  The warrants were
issued on June 2, 2014 by Judge Timothy Finan of the Circuit
Court of Maryland for Allegany County. *Id*.  "Investigators did
not recover any additional computers or digital storage media,
but did seize bedding, a tube of lubricant, a . . . vibrator,
and a scarf" after searching the Maryland residence. *Id*. at 11.
The detectives obtained a search warrant to compare Blank's DNA
to DNA recovered from the physical evidence. *See* ECF No. 37.
"Blank was charged in Allegany County with over forty counts
related to the sex abuse of a minor and related sex offenses . .
. ."[8]  *Id*. at 12.

On July 21, 2014, Detective Dixon interviewed Jane Doe's
mother again.  ECF No. 36-1 at 12.  Detective Dixon "learned of
computers and additional storage devices possibly located at a

_____

[8] On September 23, 2014, the State of Maryland filed a nolle
prosequi on all counts.  ECF No. 42 at 2.

cabin in Slanesville, West Virgina." *Id*.  Jane Doe's mother
alleged that after the interview by law enforcement on May 7,
2014, her husband "had gathered much of the electronic storage
devices from their home in LaVale, Maryland, placed them in his
vehicle and delivered them to the Blanks' cabin . . . ." *Id*.
On August 12, 2014, Jane Doe's mother gave detectives written
consent to search the cabin for electronic media and storage
devices, and accompanied them to the cabin.  *Id*.  Detectives
seized four desktop computers, two laptop computers, and an
external hard drive.  *Id*. at 2.

On August 19, 2014, Special Agent Jeff Stewart of Homeland
Security Investigations ("HSI") applied for a federal search
warrant to search Blank's cell phone and the electronic devices
recovered from the cabin.[9]  ECF No. 36-1 at 2.  Federal agents
recovered two nude photos of Jane Doe from the cell phone.  From
the devices recovered from the cabin, "forensic analysis showed
that two of the computers . . . contained recent file links,
internet explorer web browser search and web visit history with

---

[9] "While these items were seized pursuant to a [state] search
warrant and written consent, [at the time of the affidavit] only
the [cell phone] ha[d] been preliminarily reviewed.  After
consultation with the U.S. Attorney's Office, it was decided
that, out of an abundance of caution, the forensic analysis of
these items would be accomplished by a forensic analyst from the
Department of Homeland Security/Homeland Security Investigations
(DHS/HIS) and proceed only after a search warrant was obtained
in Federal court."  ECF No. 36-1 at 2.

names indicative of child pornography." ECF No. 62 at 3. The
hard drive "was determined to contain four audio files: one of
those audio files is a recording of the May 30, 2014 incident of
sexual abuse, and two additional recordings appear to have been
created during the same time frame." *Id.*

On September 25, 2014, a grand jury indicted Blank on two
counts of production of child pornography in violation of 18
U.S.C. § 2251(a) and possession of child pornography in
violation of 18 U.S.C. § 2252A(a)(5)(B). ECF No. 4. Trial was
scheduled for June 29, 2015.[10] ECF No. 19.

II.  Analysis

A.  Blank's Motions to Dismiss the Indictment

On June 19, 2015, Blank filed two motions to dismiss the
indictment. ECF Nos. 84, 86. The motions contain information
that was available to counsel long before the motions deadline;
however, counsel provided no explanation why the motions were
filed only a week before trial. Out of an abundance of caution
for Blank's rights, the Court considered these motions and all
subsequent motions filed by counsel on their merits; however, in
the future, counsel should endeavor to conform to the deadlines
ordered by the Court or provide an explanation for the motion's
lateness.

_____

[10] The Court scheduled April 28, 2015 as the deadline for
pretrial motions. ECF No. 19.

1. Motion to Dismiss for Lack of Jurisdiction

The photos at issue in the indictment were taken by Blank on his cell phone, "which was not manufactured in Maryland." ECF No. 4 at 2.  "The photos were never uploaded to the internet, transmitted through cellular technology, or otherwise shown to others.  The photos never left the state of Maryland." ECF No. 84 at 3.  Thus, because "[a]ll the conduct of the alleged relationship took place in the state of Maryland," Blank argues that "the government is using § 2252 to unconstitutionally prosecute the state law crime of statutory rape.  Yet none of [] Blank's conduct is sufficient to invoke federal jurisdiction under the Commerce Clause."  *Id.*

In *Gonzales v. Raich,* 545 U.S. 1 (2005), the Supreme Court examined a similar challenge to the Controlled Substances Act ("CSA").  Users and growers of medical marijuana argued that the CSA was unconstitutional as applied to them because their actions were purely local and had a *de minimus* effect on interstate commerce.  *Id.* at 5-10.  The Supreme Court rejected this argument, finding that Congress "devised a closed regulatory system" in order to "conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances."  *Id.* at 13.

8

The *Raich* Court emphasized that "Congress[] [has] power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id*. at 17. "In assessing the scope of Congress' authority under the Commerce Clause, [the Court] stress[ed] that the task . . . is a modest one. [A court] need not determine whether [a defendant's] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for [Congress] so concluding." *Id*. at 22. Thus, the CSA was constitutional as applied to the purely local sale of marijuana. *Id*.

In the *United States* v. *Forrest*, 429 F.3d 73 (4th Cir. 2005), the Fourth Circuit applied *Raich* to the child pornography statutes at issue in this case. Like Blank, Forrest took sexual photos of a minor in Maryland, and the photos never left Maryland. *Id*. at 76. At trial, the Government presented evidence that the cameras used to take the photos were manufactured outside Maryland, and the jury returned guilty verdicts on all counts. *Id*. On appeal, Forrest argued that 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B) were unconstitutional as applied to him "because his private production and possession of child pornography did not substantially affect interstate commerce." *Id*. at 77.

9

The Fourth Circuit reasoned that in passing §§ 2251(a) and 2252A(a)(5)(B), Congress exercised its Commerce Clause authority to regulate "'quintessentially economic' activities, *i.e.*, those involving the 'production, distribution, and consumption of commodities.'" *Id*. at 78 (quoting *Raich*, 545 U.S. at 17).

> Just as Congress rationally concluded that demand might draw homegrown marijuana into interstate markets, thereby "frustrat[ing] the federal interest in eliminating commercial transactions in the interstate market in their entirety," *id*. at 2207, so too might Congress rationally fear that homemade child pornography would find its way into interstate commerce. *Cf*. *id*. at 2212 ("The congressional judgment that an exemption for such a significant segment of the total market would undermine the orderly enforcement of the entire regulatory scheme is entitled to a strong presumption of validity."). Indeed, this concern is especially salient in the context of child pornography, because much of the material traded on that interstate market is homemade.

*Id*. Accordingly, the Fourth Circuit found that "the *de minimis* character of individual instances arising under the statute[s] is of no consequence," and the statutes were constitutional as applied to Forrest's conduct. *Id*. at 79.

The allegations against Blank are indistinguishable from the facts in *Forrest*. Thus, Blank's motion to dismiss the indictment because §§ 2251(a) and 2252A(a)(5)(B) are unconstitutional as applied to his conduct were denied.

2. Motion to Dismiss Based on Lost or Destroyed
   Evidence

Blank also argues that the indictment should be dismissed because the Government lost or destroyed "exculpatory evidence that was essential to [Blank's] defense." ECF No. 86.

"Pursuant to the discovery agreement, [Blank] demanded that the [G]overnment produce the 3-page written statement" that Jane Doe wrote on May 7, 2014. *Id.* at 3. The Government was unable to located the document because it was "probably purged [from the Department of Social Services file] pursuant to regulation within 120 days following the finding that the original complaint was unsubstantiated." *Id.* "When the Government was informed that this had happened, [it] pursued all options to obtain the information." ECF No. 90 at 3. The Government provided the Defendant with "the personal notes [] by a child protective services investigator" which "provide a very detailed account regarding the initial report and Jane Doe's recanting." *Id.* Further, Blank has access to the report by Detective Dixon, which also details Jane Doe's statement.

The Government has a duty to preserve evidence "that might be expected to play a significant role in the suspect's defense" under the Due Process Clause of the Fourteenth Amendment. *See California v. Trombetta,* 467 U.S. 479, 485 (1984). Such evidence must (1) "possess an exculpatory value that was

11

apparent [to the government] before the evidence was destroyed,"
and (2) "be of such a nature that the defendant would be unable
to obtain comparable evidence by other reasonably available
means." *Id.* at 489.  "The mere possibility that lost or
destroyed evidence could have exculpated a defendant is not
sufficient to satisfy *Trombetta*'s requirement that the
exculpatory value be 'apparent' to the [Government] before
destruction." *United States v. Matthews*, 373 Fed. App'x 386,
390 (4th Cir. 2010).

Although the Court accepts the Government's explanation
that Jane Doe's statement was not destroyed in bad faith, but
rather as a routine purge of DSS systems, the Government should
have been aware of the exculpatory nature of the statement prior
to its destruction.  The DSS system destroys files within 120
days following the finding that the original complaint was
unsubstantiated; however, in this case, a new file was opened
within 30 days, and charges were filed against Blank within 60
days.  Although, the Government argues that "the written
statement would not contradict any of the underlying facts of
this case," the fact that the Government's central witness had
changed her story in the past goes directly to her credibility.

12

Blank has established the first prong of the *Trombetta* test, but he has failed to satisfy the second prong.  The defense has "obtain[ed] comparable evidence by other reasonably available means."  *Trombetta,* 467 U.S. at 489.  Blank has access to multiple summaries of Jane Doe's statement.  The Government has never denied that Jane Doe made the statement or its contents.  Moreover, it is unlikely that the statement as a whole could have been entered into evidence as it contained information that the Court has ruled inadmissible.[11]

Blank's only argument about the necessity of Jane Doe's statement that cannot be fulfilled by the summaries is that it serves as "a prior inconsistent statement that [c]ould impeach Doe's trial testimony."  ECF No. 86 at 5.  However, Jane Doe has not testified at this time, and it is not apparent that she will deny the statement and need be impeached.  In such an event, the defense can raise the issue then, and another solution can be fashioned; for example, the parties may stipulate to the existence of the prior statement and its contents in so far as the contents are necessary to the impeachment.

Because Blank has obtained "comparable evidence by other reasonably available means," his Due Process rights were not violated by the destruction of Jane Doe's three-page statement.

---

[11] *See infra* Part II.E.

Accordingly, the Court denied the motion to dismiss the indictment.

      B.    Blank's Motions to Exclude the Cell Phone Evidence

Blank moved to exclude his cell phone, the photographs taken from his cell phone, and all evidence derived from his phone on multiple grounds, including that its seizure violated state and federal laws and the photos cannot be authenticated. ECF Nos. 34, 60.

      1. Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," U.S. Const. amend IV,  a right necessary to the functioning of a free and open society, *see Florida v. Riley*, 488 U.S. 445, 457 (1989) (Brennan, J. dissenting).  Thus, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few . . . exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted).  Blank argues that his cell phone was illegally seized because the C3I officers searched Blank's car without a warrant.  ECF No. 34 at 3.  The Government argues that the cell phone was properly seized as part of a search incident to arrest.  ECF No. 41 at 6.

14

In *Chimel v. California*, 395 U.S. 752, 757-58 (1969), the
Supreme Court recognized an exception to the warrant requirement
for searches of an arrestee's person and immediate wingspan.
Such searches assure the dual purposes of officer safety and the
need to preserve evidence. *Id.* at 781. The Court expanded the
search incident to arrest paradigm to automobiles in *New York v.
Belton*, 453 U.S. 454, 460 (1981). The Court reasoned that any
item or container within the passenger compartment of the
vehicle was within the arrestee's immediate control and
therefore subject to *Chimel*. *Id.*

In *Arizona v. Gant*, 556 U.S. 332 (2009), the Court limited
its *Belton* decision. Gant was handcuffed and locked in the back
of a patrol car when the police searched his vehicle. 556 U.S.
at 335. Because "[t]he safety and evidentiary justifications
underlying *Chimel*'s reaching-distance rule determine *Belton*'s
scope," the Court held "that *Belton* does not authorize a vehicle
search incident to a recent occupant's arrest after the arrestee
has been secured and cannot access the interior of the vehicle."
*Id.* However, the Court also recognized "that circumstances
unique to the automobile context justify a search incident to
arrest when it is reasonable to believe that evidence of the
offense of arrest might be found in the vehicle." *Id.* Thus,
there is a two prong analysis to determine if a search incident

15

to arrest in an automobile is justified: 1) if the passenger compartment of the car is within the arrestee's immediate control OR the police have reason to believe that the vehicle contains evidence of the crime of arrest. *Id.*

In this case, Blank was arrested when C3I investigators took his phone from his vehicle. At the hearing, Detective Dixon testified that he and a Maryland State Trooper had just secured Blank right outside the driver's side of the vehicle when Detective Sergeant Cook noticed Blank's cell phone next to the driver's seat. The Court need not decide whether the passenger compartment remained within Blank's immediate control at this time because a reasonable officer would have believed that in the vehicle there was evidence of the crime of arrest.

Before the traffic stop and arrest, a police officer had seen the video in which Blank took pictures of Jane Doe with his cell phone.[12] *See* ECF No. 36-2 at 5. Jane Doe also described how Blank took the pictures. *Id.* at 3. While Detective Dixon was conducting the interview, Blank called Jane Doe's mother from his cell phone to let her know that he was on his way home from work. Detective Dixon immediately set up surveillance of Blank's neighborhood, described Blank and his vehicle, and

---

[12] Although Detective Dixon did not personally view the video on June 2, 2014, he testified at the hearing that Detective Sergeant Cook viewed the video, and told Detective Dixon of its contents.

informed the other officers to look out for the cell phone as it likely had evidence of the crime. Within 45 minutes of Blank's call to Jane Doe's mother a traffic stop was conducted. Therefore, it was reasonable for the C3I agents to believe that Blank had the cell phone in his possession at the time of the traffic stop (before he reached his home), and that there was evidence of the crime of arrest--the nude pictures of Jane Doe-- on the cell phone. Accordingly, the search of the vehicle was within the limitations of *Gant* and did not violate the Fourth Amendment.[13]

Further, even if the initial seizure of the cell phone was unlawful, the Government can satisfy the independent source doctrine. The independent source doctrine "applies when a 'search pursuant to [a] warrant was in fact a genuinely independent source of the information and tangible evidence' that would otherwise be subject to exclusion because they were found during an earlier unlawful search." *United States v. Hill*, 776 F.3d 243, 251 (4th Cir. 2015) (quoting *Murray v. United States*, 487 U.S. 533, 542 (1988)). "To find the search with a warrant 'genuinely independent,' the unlawful search must not have affected (1) the officer's decision to seek the warrant

---

[13] Moreover, Detective Sergeant Cook clearly saw the phone next to the driver's seat from outside the vehicle, and when he testified, Detective Dixon stated that he saw the phone as well.

or (2) the magistrate judge's decision to issue it." *Id.*
(internal citations and quotations omitted).

Undoubtedly, C3I agents would have sought a warrant to
seize the cell phone even if the traffic stop had not occurred.
From viewing the video and interviewing Jane Doe, investigators
knew it was likely that there was evidence on the phone. *See*
ECF No. 36-2 at 3-5. Further, it is apparent from the state
warrant affidavit that detectives were seeking a warrant to
search the contents of the phone not because it was found in
Blank's truck, but because of the information they had from Jane
Doe which was independent of the search. *See id.*

However, the defense argued that in order for the
independent source doctrine to apply, "[t]he issue [] is not
whether the police had an independent basis to obtain a warrant
[to] search [] Blank's cell phone, but rather whether they had
an independent basis to obtain a warrant to search his vehicle."
ECF No. 57 at 6 (emphasis in original). The hearing testimony
has established that an independent source existed.

After Blank's arrest, he gave Detective Sergeant Cook
permission to drive "the truck from the street and park[] it in
[Blank's] driveway." *Id.* at 5. The cell phone was located
immediately to the right of the driver's seat. Thus, even if
the search incident to arrest had not occurred, Detective

18

Sergeant Cook would have seen the phone when moving the car with Blank's permission, and C3I would have had probable cause for a warrant to seize the phone from the vehicle.[14]

2. Maryland Wiretap and Visual Surveillance Laws

Blank argues that "all evidence obtained from the cell phone is derivative of [an] unlawful, surreptitious recording and should be suppressed." ECF No. 34 at 5. In essence, Blank asserts that Jane Doe's mother's videotaping of Blank and Jane Doe violated Maryland law; because Blank's arrest and all search warrant flow from that video, all evidence must be suppressed. *Id.*

"Under Maryland law, it is unlawful to [] record a conversation without the permission of all the parties." *Bodoy v. N. Arundel Hosp.*, 945 F. Supp. 890, 899 (D. Md. 1996); *see also* Md. Code Ann., Cts. & Jud. Proc. § 10-402. If such a recording is made, even by a private party and not the police, "no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . ." Md. Code Ann., Cts. & Jud. Proc. § 10-405. It is also a Maryland crime to "conduct or procure another to conduct visual surveillance of an individual in a private place without the consent of that individual." Md. Code Ann., Crim. Law § 3-901.

---

[14] The plain view exception may also have applied under these facts.

This criminal statute, however, does not prohibit such videos from being used as evidence in court. *See id.*

It is unnecessary for the Court to analyze whether Ms. Blank's actions violated the Maryland statutes.  "[F]ederal law governs the admissibility of evidence in federal prosecutions." *United States v. Charles*, 213 F.3d 10, 19 (1st Cir. 2000).  "As a result, '[e]vidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings *without regard to state law.*'"  *Id.* (quoting *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991)) (emphasis in original).[15]  "This is true even when the evidence is obtained pursuant to a state search warrant or in the course of a state investigation." *Id.* (internal quotations and citation omitted).

In this case, Ms. Blank's video did not violate federal law or the constitution, and is therefore admissible.  Further, even if Maryland law did apply, it would not mandate the remedy Blank seeks.  Although Maryland Code § 10-405 states that "no evidence derived [from an illegal recording] may be received in evidence

---

[15] *See also United States v. Barefield*, 260 Fed. App'x 575, 575 (4th Cir. 2008) ("[W]hether or not a seizure violates state law is irrelevant to the determination of a motion to suppress in federal court."); *United States v. Glasco*, 917 F.2d 797, 798-800 (4th Cir. 1990) (failure of state officers to comply with state law governing electronic surveillance did not warrant suppression of tape recordings in federal prosecution).

in any trial, hearing, or other proceeding in or before any

court . . . ," this statute only applies to the recording of

*conversations*.[16]   In comparison, the videotaping statute does not

have an exclusionary rule.  *See* Md. Code Ann., Crim. Law § 3-

901.  It is apparent from the search warrant affidavits and the

evidence in this case, that the state police officers did not

"derive" the need to search the cell phone from the conversation

that was recorded between Jane Doe and Blank, but from the

visual depiction of Blank using the phone to take pictures and

Jane Doe's interview with investigators.  Thus, even if Maryland

law were applicable, the cell phone would not be suppressed, and

the Government would be permitted to play the video for the jury

without sound.

   3. Authentication

   Finally, Blank argues that the cell phone is inadmissible

because "it cannot be authenticated."  ECF No. 34 at 9.  Namely,

Blank asserts that "[t]he discovery produced to date raises

questions about the authenticity of the photos and other

evidence allegedly extracted from the cell phone" because 1)

"[t]here is nothing in the record addressing or establishing

[the state detective's] qualifications to forensically extract

---

[16] *See Deibler v. State*, 776 A.2d 657, 659-60 (Md. 2001)
(defendant guilty under wiretap law because one "could hear
voices" on a videotape recording, and he "intended to intercept
an *oral* communication") (emphasis added).

digital evidence from deleted files on a cell phone;" 2) [t]here
is nothing in the record that establishes a chain of custody for
the cell phone and extracted evidence;" and 3) there are
"certain discrepancies" between the state and federal reports.
*See* ECF No. 60 at 2.

"The 'chain of custody' rule is but a variation of the
principle that real evidence must be authenticated prior to its
admission into evidence." *United States v. Howard-Arias*, 679
F.2d 363, 366 (4th Cir. 1982).  Federal Rule of Evidence 901
requires the proponent of evidence to "produce evidence
sufficient to support a finding that the item is what the
proponent claims it is."  "Therefore, the ultimate question is
whether the authentication testimony was sufficiently complete
so as to convince the court that it is improbable that the
original item had been exchanged with another or otherwise
tampered with." *Howard-Arias*, 679 F.2d at 366.

The Government need not develop the chain of custody with
precision, "and the fact of a 'missing link does not prevent the
admission of real evidence, so long as there is sufficient proof
that the evidence is what it purports to be and has not been
altered in any material aspect.'" *Howard-Arias*, 679 F.2d at 366
(quoting *United States v. Jackson*, 649 F.2d 967 (3d Cir. 1981)).

Resolution of chain of custody disputes rests within the sound discretion of the trial judge. *Id*.

Blank's brief simply states that nothing establishes a chain of custody from receipt of the cell phone by the state until the federal tests were run. *See* ECF No. 60 at 2.  The Government asserts that "the chain of custody of the video after it was turned in by the Defendant's wife is well-documented and preserved." ECF No. 41 at 8.  The Government does not address the chain of custody for the cell phone. *See id*.  Because it is possible for the Government to provide either 1) the chain of custody for the cell phone or 2) "sufficient proof that the [cell phone] is what it purports to be and has not been altered in any material aspect,"[17] the Court deferred ruling on this portion of the motion until trial.

Blank's other authenticity arguments, however, confuse the admissibility of the photos and the weight to be given the photos by the jury.  Blank's counsel is free to attack the qualifications of the state detectives as well as the disparity between the reports on cross-examination; however, these facts do not mandate exclusion of the evidence.

---

[17] *Howard-Arias*, 679 F.2d at 366.

C.    Blank's Other Fourth Amendment Motions

1. Blank's Maryland Residence

Blank asserts that the search of his Maryland home violated the Fourth Amendment because "the affidavit underlying the warrant did not establish probable cause to believe evidence of a crime would be found in that location" and "was so deficient that no objectively reasonable officer would have relied in good faith on the legality of the search warrant."  ECF No. 32 at 2.

There is probable cause for a search when there is a "fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Probable cause does "not require officials to possess an airtight case before taking action," and officers "must be given leeway to draw reasonable conclusions" from information. *Taylor v. Farmer*, 13 F.3d 117, 121-22 (4th Cir. 1993).

In reviewing the probable cause determination, "[the Court] accord[s] great deference to the issuing judge's assessment of the facts presented."  *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011).  "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [judge's] decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).  In addition

24

to the probable cause requirement, a valid warrant must be issued by a "neutral and detached magistrate" and must state with particularity the place to be searched and the items or person to be seized. *See* U.S. Const. amend IV; *United States v. U.S. Dist. of Mich.*, 407 U.S. 297, 316 (1972).

In order to "mandate an evidentiary hearing" on the validity of a search warrant,

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks v. Delaware*, 438 U.S. 154, 171-72 (1978).

Furthermore, under the "good faith" exception, when officers rely on a facially valid warrant and the supporting affidavit is later found to lack probable cause, the evidence seized is not subject to the exclusionary rule and is admissible

in the Government's case in chief.  *United States v. Leon*, 468
U.S. 897, 913 (1984).  The evidence will be suppressed only if
(1) the issuing judge was misled by information that the affiant
knew or should have known was false, (2) the judge "wholly
abandoned" his or her neutral role, (3) the affidavit was "so
lacking in indicia of probable cause as to render official
belief in its existence entirely unreasonable," or (4) the
warrant is so facially deficient that no reasonable officer
could presume it to be valid.  *Id.* at 923.

Here, there was probable cause to believe that evidence of
a crime was in the Maryland residence.  C3I investigators had a
video showing the sexual assault of a minor on the premises, as
well as Jane Doe's account of what occurred in her bedroom.  The
search warrant sought items that were seen in the video, for
example, the bed comforter and the tube of lubricant.  Further,
even if the warrant had lacked probable cause, there is no
evidence that the issuing judge "abandoned" his or her neutral
role in signing the warrant.  Nor is there any evidence that the
warrant is so facially deficient that no reasonable officer
could presume its validity.  Blank's allegations are merely
conclusionary, and he is not entitled to a hearing on this
motion.  Accordingly, the Court denied Blank's motion to
suppress evidence from the search of his home.

2. DNA Evidence

C3I investigators seized Blank's DNA in accordance with a state warrant. *See* ECF No. 37 at 1. Blank makes the same conclusionary allegations about the DNA search warrant as he did for his attack on the warrant for his Maryland residence. *See* ECF No. 37 at 2. Accordingly, this motion must fail for the same reason as his motion to exclude evidence obtained from his home--the video and Jane Doe's interview provided probable cause that Blank's DNA would be found on the physical evidence from the home, and even if the warrant had lacked probable cause, there is no evidence that the issuing judge "abandoned" his or her neutral role in signing the warrant. In accordance with the specificity requirements detailed in *Franks*, Blank is not entitled to an evidentiary hearing on this motion. *See Franks*, 438 U.S. at 171-72.

3. Blank's West Virginia Cabin

On July 21, 2014, Ms. Blank told C3I investigators that after the interview by law enforcement on May 7, 2014, her husband "had gathered much of the electronic storage devices from their home in LaVale, Maryland, placed them in his vehicle and delivered them to the Blanks' cabin . . . ." *Id.* On August 12, 2014, Jane Doe's mother gave detectives written consent to search the cabin for electronic media and storage devices, and

27

accompanied them to the cabin. *Id.* Detectives seized four desktop computers, two laptop computers, and an external hard drive. *Id.* at 2. Blank argues the search of the cabin violated the Fourth Amendment because it was conducted without a warrant, and Ms. Blank did not have the authority to consent. ECF No. 33 at 2. Because of the differentiation between actual and apparent authority to consent, the Court will detail the evidentiary hearing testimony by Elizabeth Grey, nee Blank, and Detective Dixon separately.

a. Elizabeth Blank's Testimony

Elizabeth Blank testified that Blank purchased the cabin in either 2011 or 2012 while the couple were not legally married, but were living together. Only Blank's name was on the title; however, there were two sets of keys to the residence--one on Blank's key chain and one on a ring of house keys that was kept at the couple's residence.

The cabin was a one-bedroom property on five acres. No one in the family, including Blank, lived at the cabin or used it regularly because it was "run down" and "moldy."[18] Ms. Blank stated that she guessed Blank intended when he purchased the cabin to use it as a vacation home for the family; however, after its purchase, he told her it would serve as a "bug-out"

---

[18] Ms. Blank stated that someone would go down to the cabin every once in a while to clean the yard.

home or "hideout" if either a natural disaster struck or if the police was ever after him.  In accordance with this plan, Ms. Blank, who was a nurse, stocked the cabin with medical supplies.

Before Blank's arrest, the last time Ms. Blank had been to the cabin was approximately in the Fall of 2013.  After Blank's arrest, she left Maryland with her children.  On their way to Iowa, Ms. Blank and her family stopped at the cabin to collect things that Blank had moved there, including Jane Doe's Ipod and Ms. Blank's laptop.  The family returned to Maryland in July 2014.

### b. Detective Dixon's Testimony

On July 21, 2014, Detective Dixon interviewed Ms. Blank. During the interview, Ms. Blank told him that Jane Doe had informed her that Blank had moved electronics to the cabin after the May 7, 2014 investigation.  Ms. Blank told Detective Dixon that she had access to the cabin and could "come and go as she pleased."  She told him that she had the key to the cabin because she got a key to Blank's truck from her desk, and then recovered the "only" key to the cabin from Blank's truck. Detective Dixon did not research the ownership of the cabin, but during the interview, Ms. Blank stated that "they" owned the cabin and "we bought the cabin . . . ."  Detective Dixon was aware that Blank and Ms. Blank were estranged after the arrest.

29

On August 12, 2014, Ms. Blank went with Detective Dixon to the cabin, she signed a search and seizure consent form, and let him in with a key.  She walked through the cabin with him and pointed out items that she thought Blank had moved there.

### c. Consent to Search the Cabin Was Valid

The Fourth Amendment's warrant requirement does not apply "to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriquez*, 497 U.S. 177, 181 (1990) (internal citations omitted).  "Common authority" is defined by "mutual use of the property by persons generally having joint access or control for most purposes . . . ." *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974).  "'Common authority' in this context is not merely a question of property interest.  Rather, it requires evidence of 'mutual use' by one generally having 'joint access or control for most purposes.'" *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007) (quoting *Matlock*, 415 U.S. at 171).  It is the Government's burden to establish common authority. *Rodriquez*, 497 U.S. at 181.

Absent actual authority, a search will not violate the Fourth Amendment if the third party had apparent authority to consent to the search, based on law enforcement's reasonable

belief that the third party had common authority.  *See*

*Rodriquez*, 497 U.S. at 183-87 ("The Constitution is no more

violated when officers enter without a warrant because they

reasonably (though erroneously) believe that the person who has

consented to their entry is a resident of the premises, than it

is violated when they enter without a warrant because they

reasonably (though erroneously) believe they are in pursuit of a

violent felon who is about to escape.").  "As long as 'the facts

available to the officer at the moment . . . warrant a [person]

of reasonable caution in the belief that the consenting party

had authority,' apparent authority to consent exists, and

evidence seized or searched pursuant to that consent need not be

suppressed."  *Buckner*, 473 F.3d at 555 (quoting *Rodriquez*, 497

U.S. at 188).

The facts provided at the evidentiary hearing establish

that Ms. Blank had actual authority to consent to the search

because she had common authority over the cabin.  Throughout the

hearing, defense counsel emphasized that Ms. Blank's name was

not on the title of the property, and that she neither lived

there nor traveled there regularly.  First, property interest is

not determinative of common authority.  *Buckner*, 473 F.3d at

554.  Further, although Ms. Blank neither lived at the cabin nor

use it regularly, neither did Blank.  According to Ms. Blank *no*

31

*one* in the family regularly used the property because it was "run down" and "moldy."  Instead, Blank wanted to use the cabin as a "hideout," and Ms. Blank traveled to the cabin to stock it with medical supplies.  Whether or not there was an extra set of keys in her house, or a single set held by Blank as she told Detective Dixon, Ms. Blank was free to enter and leave the property without Blank and used the property as frequently as Blank.  There is sufficient evidence to conclude that she had actual authority to consent to the search.

Moreover, even if Ms. Blank lacked actual authority to consent, she had apparent authority.  Many of the issues with Ms. Blank's authority that defense counsel emphasized at the hearing (e.g. only Blank's name on the title, her infrequent visits, etc.), were unknown to Detective Dixon at the time of the search.  *See Rodriquez*, 497 U.S. at 183-87 (apparent authority analyzed based on law enforcement's reasonable beliefs).  Defense counsel further argued that Detective Dixon should have researched the property's ownership or sought a warrant because weeks passed between learning of the evidence and the consent search.  As previously discussed, however, property ownership is not determinative of authority, and defense counsel has cited no authority placing a burden on law enforcement a duty to research apparent authority before acting,

32

nor a case stating that there is some sort of time limitation
under which law enforcement may act on apparent authority.

Here, Detective Dixon had consent from Blank's wife.  She
told him that "they" owned the cabin, and stated that "we had
bought it . . . ."  She told him that she had been to the cabin
previously and "could come and go as she pleased."  Although she
told him that she recovered the only set of keys from Blank's
car, there was enough information for a law enforcement officer
to form a reasonable belief that she could consent to the
search; nor was this belief negated by Dixon's knowledge that
the Blanks were estranged.  *Cf. United States v. Shelton*, 337
F.3d 529, 530, 532-38 (5th Cir. 2003) (estranged wife had
authority to consent).

D.   Blank's Motion to Exclude Jail Recordings

In discovery, the Government provided to Blank recordings
of conversations between Blank and members of his family which
were made while Blank was detained at the Allegany County
Detention Center.  ECF No. 83 at 1.  Blank moved to suppress the
recordings under Federal Rules of Evidence 401, 402, and 403
because "[t]he subject matter of the conversations is family and
personal matters that have no apparent bearing on any element of
any offense," and "certain portions of the recordings are

33

unclear or ambiguous." *Id.* at 2.  The Government represents

that the recordings

> contain conversations the Defendant had with his
> father and aunt regarding the need to break into a
> cabin in West Virginia and remove evidence the
> Defendant himself had taken there just after law
> enforcement visited his residence on May 7, 2014,
> which was in response to the initial report of sexual
> abuse.  In the jail call on June 29th, 2014, and the
> jail visit on July 2, 2014, of which the Government
> proposes to introduce approximately 15 minutes
> collectively, the Defendant repeatedly and heatedly
> explained to his father that he desperately needed his
> father and/or aunt to get into the cabin and remove
> certain items. At one point, the Defendant remarked
> that if they did not do so, "Just say goodbye to
> me."

ECF No. 41 at 4.

Federal Rule of Evidence 401 states that evidence is

relevant if "it has any tendency to make a fact more or less

probable than it would be without the evidence; and, the fact is

of consequence in determining the action."  Rule 403 allows a

court to "exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading

the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."

Based on the Government's representation, the recordings

are relevant and more probative than prejudicial.  In the

recording, Blank admits moving items from his home to the cabin

after the May 7, 2014 interview, and implies that the evidence
will result in his conviction.  When police searched the cabin,
they found evidence, including recordings of the May 30, 2014
encounter during which the photos were allegedly taken.  These
recordings make it "more or less" probable that the evidence
found at the cabin belonged to Blank, and "contradict[] the
notion" that Blank had "entirely innocent purposes" for creating
the recordings and related photos.  *See Forrest*, 429 F.3d at 80.
Further, Blank has stated in his briefs that he plans to argue
that Ms. Blank and Jane Doe placed the evidence at the cabin and
that it does not belong to him.  *See* ECF No. 79 at 2-3; ECF No.
94 at 10-11.  The recordings also refute this argument.

Accordingly, the Court denied Blank's motion to exclude the
jail house recordings.

E.   Motions Relating to Jane Doe

1. Evidence of Sexual History

Blank moved to admit evidence of "certain prior sexual
behavior by the alleged victim" because "[t]hese actions of Jane
Doe are material to the theory of the defense and the exclusion
of such evidence would violate [] Blank's Sixth Amendment right
to confront witnesses."  ECF No. 67 at 1.  Blank seeks to
introduce 1) evidence that Jane Doe has a history of engaging in
internet related sexual activity . . . ;" 2) evidence that Jane

35

Doe's mother previously bought Jane Doe vibrators, including the one in the photos; and 3) "evidence that Jane Doe engaged in sexually suggestive behavior with her mother." *Id.* The Government argues that this evidence violates Federal Rule of Evidence 412. *See* ECF No. 82 at 1-2.

Under Federal Rule of Evidence 412, "evidence offered to prove that a victim engaged in other sexual behavior," and "evidence offered to prove a victim's sexual predisposition," "is not admissible in a civil or criminal proceeding involving alleged sexual misconduct." In criminal cases, such evidence may be admitted under three narrow exceptions: 1) "evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;" 2) "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor;" and 3) "evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1). "Before admitting evidence under this rule, the court must conduct an in camera hearing and give the victim and parties a right to attend and be heard. Unless the court orders otherwise, the motion,

related materials, and the record of the hearing must be and
remain sealed."   Fed. R. Evid. 412(c)(2).

Rule 412 "aims to safeguard the alleged victim against the
invasion of privacy, potential embarrassment and sexual
stereotyping that is associated with public disclosure of
intimate sexual details and the infusion of sexual innuendo into
the factfinding process.  By affording victims protection in
most instances, the rule also encourages victims of sexual
misconduct to institute and to participate in legal proceedings
against alleged offenders."  *See* Advisory Committee Notes.
"[T]o achieve these objectives by barring evidence relating to
the alleged victim's sexual behavior or alleged sexual
predisposition, whether offered as substantive evidence *or for*
*impeachment*, except in designated circumstances in which the
probative value of the evidence significantly outweighs possible
harm to the victim."  *Id*. (emphasis added).

In this case, the evidence sought by Blank does not meet
the first two exceptions to Rule 412.  There is no physical
evidence that can be linked to another perpetrator, and consent
is not a permissible defense to the charges.  *See United States*
*v. Ballinger*, No. 10-CR-30095 DRH, 2011 WL 797379, at *1 (S.D.
Ill. Feb. 28, 2011) (rejecting consent evidence).  Instead,
Blank argues that excluding Jane Doe's history would violate his

right to confront witnesses; namely, by showing that Jane Doe
had a history of internet sexual activity, it would raise the
inference that it was her idea to take the photos, and the
evidence of the relationship with her mother shows bias. *See*
ECF No. 67.

a. Blank's Mental State

18 U.S.C. § 2251(a) "contains three essential elements: 1)
the victim was less than 18 years old; 2) the defendant used,
employed, persuaded, induced, enticed, or coerced the minor to
take part in sexually explicit conduct for the purpose of
producing a visual depiction of that conduct; and 3) the visual
depiction was produced using materials that had been transported
in interstate or foreign commerce." *United States v. Malloy*,
568 F.3d 166, 169 (4th Cir. 2009).  Blank argues that evidence
of Jane Doe's sexual history negates these elements by
"establishing Jane Doe's predilection for viewing, taking,
sharing, and maintaining nude and pornographic photos tends to
negate any inference of coercion" and "this evidence tends to
refute any showing that [] [Blank's purpose in engaging in
sexual conduct with Jane Doe was to produce a visual depiction
of that conduct." ECF No. 67 at 3-4.  These arguments are
without merit.

38

Blank ignores that there is more than mere "coercion" in the statute.  Section 2251(a) makes it illegal for anyone to "employ[], use[], persuade[], induce[], entice[], *or* coerce[] any minor . . ." (emphasis added).  Numerous courts, including the Fourth Circuit, have defined "using" a minor within the meaning of § 2251(a) as "photograph[ing] the minor engaging in sexually explicit conduct to create a visual depiction of such conduct."  *United States v. Engle,* 676 F.3d 405, 418 n. 9 (4th Cir. 2012); *United States v. McCloud,* 590 F.3d 560, 566 (8th Cir.2009); *United States v. Sirois,* 87 F.3d 34, 41 (2d Cir.1996); *United States v. Wright,* No. 1:12-CR-130, 2013 WL 164096 (W.D.Mich. Jan. 15, 2013); *United States v. Ritter,* No. 11-CR-40037-FDS, 2012 WL 1965404, *6 (D.Mass. May 30, 2012); *United States v. Helton,*No. CR-07-70-T, 2007 WL 1674196, *5 (W.D.Okla. June 7, 2007).

The First Circuit reasoned that unlike "coerce" or "employ," "use"

> reaches a defendant's active involvement in producing the depiction even if the interpersonal dynamics between the defendant and the depicted minor are unknown.  Inclusion of the term 'use' in the statute permits the conviction of a defendant who was actively and directly involved in producing a sexually explicit depiction of a minor even in the absence of a complaining witness or even without being able to identify the specific minor.

*Ortiz-Graulau v. United States,* 756 F.3d 12 (1st Cir. 2014)
("*Ortiz II*").  Accordingly, the First Circuit found, rejecting
an argument identical to Blank's, that testimony that it was the
minor's idea to take the pictures and "that the photographs were
taken for no particular purpose" "did not support a lawful
defense" to § 2251(a).  *Id.* at 17-19.[19]

Further, in *United States v. Raplinger,* 555 F.3d 687, 689
(8th Cir. 2009), the defendant sought to enter evidence of a
minor's sexual history to show that they were in a loving
relationship and "to contradict the government's assertion that
he engaged in the sexually explicit conduct with S.S. 'for the
purpose of' producing photographs as required for conviction
under 18 U.S.C. § 2251(a)."  The Eight Circuit found no error in
excluding evidence of the defendant and minor's "multiple sexual
encounters" because "[t]he government need not prove that
producing the photographs was [the defendant's] sole purpose for
engaging in the sexual activity."  *Id.; see also United States
v. Sirois,* 87 F.3d 34, 39 (2d Cir. 1996)(section 2251(a)
conviction did not require proof that illegal sexual activity
was the sole or dominant purpose of the minor's being

---

[19] The Court notes that Blank based his argument on a single case
*United States v. Ortiz-Graulau v. United States*, 526 F.3d 16, 20
(1st Cir. 2008) ("*Ortiz I*").  The First Circuit clarified the
reasoning quoted by Blank, and rejected Blank's argument in
*Ortiz II*.

transported so long as the evidence showed it to be one of the dominant motives and not a mere incident of the transportation).

"[A] defendant's right to present a defense is not absolute: criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial." *United States v. Prince-Oyibo*, 320 F.3d 494, 501 (4th Cir. 2003); *see also United States v. Etheredge*, 254 Fed.Appx. 969, 970 (4th Cir. 2007).  If facts do not support a legally cognizable defense, they are not relevant, and their exclusion does not violate the Defendant's Sixth Amendment rights.  *See United States v. Powers*, 59 F.3d 1460, 1469-70 (4th Cir. 1995).

Here, Blank attempted to argue that because Jane Doe has a history of internet related activity, it was her idea to take the photos, and therefore Blank could not have engaged in the sexual encounter "for the purpose of" producing photographs. ECF No. 67 at 4.  At its core, this argument depends on the very sexual propensity logic that Rule 412 seeks to halt--because the victim was sexually active in the past, the jury should conclude that taking the pictures on this occasion was her idea.[20] Finally, that it was Jane Doe's idea to start taking the

---

[20] Further, Blank's argument is essentially another way to argue that Jane Doe consented, which is not a valid defense to these charges.

photographs is no defense to the charges;[21] the Government can still prove through Blank's actions that taking the photos was one of his purposes and that he "used" Jane Doe.[22] *See Raplinger*, 555 F.3d at 689; *Ortiz II*, 756 F.3d at 17-19 (testimony that it was the minor's idea to take the pictures and "that the photographs were taken for no particular purpose" "did not support a lawful defense" to § 2251(a)).

### b. Jane Doe's Sexual Relationship with her Mother

Blank argues that evidence that Jane Doe's mother bought her vibrators in the past, and the pair engaged in "sexually suggestive behavior" goes to show bias and "lack of credibility." This evidence does not affect the charges against Blank in any way, falls squarely with Rule 412's protections, and will not be permitted before the jury.

### 2. Evidence of Mental Health History

The Government moved *in limine* to "preclude or limit" inquiry into Jane Doe's mental health history. ECF No. 65 at 6. Jane Doe has a history of mental health treatment, depression,

---

[21] Defense counsel is free to ask Jane Doe on cross examination who had the initial idea to take the photos *during this incident* without delving into her prior sexual history in violation of Rule 412.

[22] The Court's reasoning here applies equally to any assertion by the defense that "Jane Doe's prior familiarity and experience using a vibrator tends to refute the suggestion of coercion . . . ." Accordingly, such evidence will not be permitted.

and "cutting." *Id.* at 2.   Blank argues that this information is necessary because it goes directly to Jane Doe's credibility. *See* ECF No. 72 at 2.

"District courts may 'place limitations upon the cross-examination of . . . witnesses'[23] . . .   'based on concerns including harassment, prejudice, confusion of the issues, repetition, or marginal relevance.'"[24]   In *United States v. Lopez*, 611 F.2d 44, 45 (4th Cir. 1979), the Fourth Circuit stated that "[o]ne's psychiatric history is an area of great personal privacy which can only be invaded in cross-examination when required in the interests of justice" because such questioning "is manifestly unfair and unnecessarily demeaning of the witness."   Therefore, a court should allow questioning on mental history only when "the witness' mental impairment is related to 'his capacity to observe the event at the time of its occurrence, to communicate his observations accurately and truthfully at trial, or to maintain a clear recollection in the meantime.'"   *Id.* (quoting Commonwealth v. Butler, 331 A.2d 678, 680 (Pa. Super. Ct. 1974)).   Numerous courts have held that depression, including "cutting" or attempted suicide, does not

---

[23] United States v. Zayyad, 741 F.3d 452, 459 (4th Cir. 2014) (quoting *United States v. Janati,* 74 F.3d 263, 274 (4th Cir. 2004)).

[24] *Id.* (quoting *United States v. Turner,* 198 F.3d 425, 429 (4th Cir. 1999)).

reflect on a witness's ability to tell the truth.  *See, e.g.*, *United States v. Butt*, 955 F.2d 77, 82-83 (1st Cir. 1992) (witnesses hospitalization, depression, and attempted suicide were not relevant to credibility).

In this case, Jane Doe's history of depression and "cutting" are not relevant to her credibility.  However, to the extent that defense counsel seeks to introduce evidence that Jane Doe has stated that she is "a compulsive liar" or has a mental condition that causes her to lie, such evidence will be permitted because this evidence does affect credibility.

F.    Motions Relating to Blank's Character

The Government moved pursuant to Federal Rule of Evidence 404(b) to admit evidence of Blank's "internet records and audio files" which were recovered from the electronic devices at the West Virginia cabin.  ECF No. 62 at 1-2.  The Government provided seven pages of "file links, internet explorer web browser search and web visit history with names indicative of child pornography."  *Id*.  The Government also wishes to introduce four audio files recovered from an external hard drive at the cabin, including an audio file of the May 30, 2014 incident, and "a summary exhibit detailing the voluminous pornography recovered alongside [Blank's] electronic devices . .

. ."[25]  Blank asserts that this evidence is unnecessary to prove

the charged offenses and only serves to inflame the jury.  *See*

No. 79 at 2-3; ECF No. 88 at 2.

Rule 404(b) prohibits "evidence of a crime, wrong, or other

act . . . to prove a person's character in order to show that on

a particular occasion the person acted in accordance with the

character."  However, evidence of other crimes, wrongs, or acts

is admissible to prove "motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or

incident."[26]  Further, "[e]vidence of prior bad acts is

admissible if it is . . . necessary to show an essential part of

the crime"[27] or provides context to the charged offense.[28]

The Fourth Circuit "has[s] articulated a four-prong test of

admissibility for prior-act evidence: 1) the prior-act evidence

must be relevant to an issue other than character, such as

---

[25] C3I investigators recovered 11 magazines and 90 DVDs of legal
pornography from the cabin.  ECF No. 90 at 5-6.  Many of the
magazines and DVDs had titles that included "barely legal" or
"just 18."  *Id*.

[26] "[I]t is well established that that list 'is illustrative
rather than exclusionary.'"  *United States v. Grimmond*, 137 F.3d
823, 831 (4th Cir. 1998) (quoting *United States v. Powers*, 59
F.3d 1460, 1464 (4th Cir. 19995)).

[27] *Powers*, 59 F.3d at 1464.

[28] *See, e.g.*, *United States v. Kennedy*, 32 F.3d 876, 885-86 (4th
Cir. 1994); *United States v. Masters*, 622 F.2d 83, 86 (4th Cir.
1980).

intent; 2) it must be necessary to prove an element of the crime
charged; 3) it must be reliable; and 4) as required by Federal
Rule of Evidence 403, its probative value must not be
'substantially outweighed' by its prejudicial nature." *United
States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997).  Under this
test, Rule 404(b) is "an 'inclusionary rule' which 'admits all
evidence of other crimes relevant to an issue in a trial except
that which tends to prove only criminal disposition.'" *United
States v. Mark*, 943 F.2d 444, 447 (4th Cir. 1991) (quoting
*Masters*, 622 F.2d at 85)).

As noted by the Government, knowledge and intent are
clearly elements of the charged offenses.  Numerous courts,
including the Fourth Circuit, have allowed evidence of other
instances of child and/or legal pornography possession to show
motive, intent, and knowledge for the charged crimes in this
case.[29]  Two cases are particularly illustrative.

---

[29] *See United States v. Fenn*, 554 Fed. App'x 133, 134 (4th Cir.
2014) (legal sexual cartoon introduced in receipt and possession
of child pornography prosecution); *United States v. Stanley*, 533
Fed. App'x 325, 328-29 (4th Cir. 2013) (file names and search
terms "associated with child pornography" used to show intent);
*United States v. Nanda*, 178 F.3d 1287, at *6-7 (4th Cir. 1999)
(unpublished opinion) (chat room dialogues with supposed minors
and 12 additional child pornography photos permitted in §
2252(a)(2) prosecution in order to show "intent, knowledge, and
absence of mistake"); *see also United States v. Phipps*, 523
Fed. App'x 498, 499 (9th Cir. 2013) (three pornographic stories
permitted in a § 2252A(a)(1) prosecution to show knowledge);
*United States v. Knope*, 655 F.3d 647, (7th Cir. 2011) (online

In *United States v. Roux*, 715 F.3d 1019, 1021 (7th Cir.
2013), the defendant was charged with inducing or coercing a
minor to create sexually explicit images, in violation of 18
U.S.C. § 2251(a).  The defendant was the minor's mother's
boyfriend and had been sexually abusing the minor for years.
*Id*.  After the minor reported the abuse to school authorities,
police learned "that during the course of the abuse, [the
defendant] had taken sexually explicit photographs of [the
minor]."  *Id*. at 1022.  At trial, "pursuant to [Rule] 404(b) and
over [the defendant's] objection, the court allowed two of [the
minor's] sisters . . . to give testimony about the sexual abuse
that [the defendant] had inflicted on them."  *Id*.  On appeal,
the defendant argued that the testimony about sexual abuse of
other victims was improper because "Child abuse has a 'unique
stigma' in society, and the introduction of such inflammatory
evidence has a correspondingly unique prejudicial effect," and
the instances were not sufficiently similar because he never
took photographs of the other victims.  *Id*. at 1024.

---

chats with other minors permitted); *United States v. Goff*, 155
Fed. App'x 773, 776 (5th Cir. 2005) (magazine called "Barely
Legal" because "it is implicit in the magazine's title that its
photographic subjects will be as close in age to being 'illegal'
as the First Amendment permits, and the magazine was relevant to
showing that Goff had a 'knowing interest in child
pornography'"); *United States v. Long*, 328 F.3d 655, 661-63
(D.C. Cir. 2003) (government introduced 250 pictures of child
pornography because it showed intent and "tend[ed] to undermine
the defendant's innocent explanation).

The Seventh Circuit held that the testimony was permissible
under Rule 404(b).  *Id.*  The court noted that, at trial, the
defendant argued that "he did not take the sexually explicit
photographs . . . and was instead being framed" by the minor and
her mother.  *Id.*  This defense "necessarily implicated his
motive."  *Id; see also*, *United States v. Siddiqui,* 699 F.3d 690,
702 (2d Cir. 2012) ("[U]nlike issues of knowledge and intent,
the defendant's motive—an explanation of *why* the defendant would
engage in the charged conduct—becomes highly relevant when the
defendant argues that he did not commit the crime.") (emphasis
in original).  "'Prior instances of sexual misconduct with a
child victim may establish a defendant's sexual interest in
children and thereby serve as evidence of the defendant's motive
to commit a charged offense involving the sexual exploitation of
children,' including child pornography offenses, and 'it also
may serve to identify the defendant to the crime.'"  *Roux*, 715
F.3d 1025 (quoting *United States v. Sebolt,* 460 F.3d 910, 917
(7th Cir. 2006)).

Similarly, in *United States v. Tanguay*, 982 F. Supp. 2d
119, 120 (D.N.H. 2013), the court permitted other acts evidence
to show the defendant's knowledge in a § 2252A(a)(5)(B)
prosecution.  The Government was permitted to introduce: 1)
stories graphically describing sexual encounters between male

48

adults and male children, 2) sexually suggestive, but not
necessarily pornographic, photographs of either male children or
young-looking male adults, located in a folder called "On-Line
Friends," 3) pornographic photographs of an 18-year old male
identified as "Jared" that Tanguay had shown to a witness who
testified at trial, and 4) "bookmarks" to websites with names
that suggest sexually explicit material featuring male children.
*Id.*   In permitting the evidence, the court noted that "[t]he
knowledge element is difficult to prove, and defendants commonly
claim that they were merely . . . unwitting participants."   *Id.*
at 121-22 (quoting *United States v. Aguilar-Aranceta*, 58 F.3d
796, 798 (1st Cir. 1995)).   The court reasoned that "the
doctrine of chances" reduced the likelihood that the defendant
possessed the charged pornography innocently or unknowingly,
because he also possessed the additional pornographic materials.
*Id.* at 123-24.   Thus, the materials were admissible to show
intent and knowledge.   *Id.*

        Here, throughout the numerous motions, Blank has argued
that he did not have the required mental state when taking the
images of Jane Doe, that taking the pictures was her idea, and
that he never meant to possess the pictures.   *See* ECF No. 67 at
3-5.   Blank has even proposed an affirmative defense jury
instruction.   *See* ECF No. 76 at 1-2.   These arguments only

                                49

emphasize that Blank's intent and motive are directly at issue in this trial, and that the proposed evidence is not merely evidence of criminal disposition. *See, e.g.*, *United States v. Russell*, 662 F.3d 831, 841-45 (7th Cir. 2011) (prior instance of molestation necessary to refute the defendant's argument that it was the minors' idea to remove their clothes for a photography shoot and that he did not stage them in suggestive poses). For example, many on the computer files proposed by the Government occurred in late 2011, before Jane Doe lived with Blank. *See, e.g.*, ECF No. 62, Ex. 1 at 1. Therefore, this evidence shows that Blank had an interest in child pornography before his interactions with Jane Doe, and refute his argument that he did not have a sexual relationship with her "for the purpose of" producing the photographs. Accordingly, the evidence proposed by the Government is "necessary" and "relevant" under the Fourth Circuit's test.

Blank argues, however, that even if the evidence is necessary and relevant, it is not reliable because "the government cannot establish that the user of the computers in question was [Blank],"[30] that the search terms and files are too remote, and the "government cannot establish that child

---

[30] Blank asserts that the computers were at Blank's cabin for several months after his arrest during which they could have been accessed by others, including his wife. ECF No. 79 at 2.

pornography was actually viewed on these computers."   ECF No. 79
at 2-3.   Although these arguments address the weight the jury
might give the proffered evidence, it does not make them so
unreliable as to mandate their exclusion.

First, the Government has provided evidence that the
computers belong to Blank—there is testimony that he moved them
to the cabin and jail recordings in which he asked family
members to remove evidence from the cabin or they could "[j]ust
say goodbye to [him]."   *See* ECF No. 41 at 4.   Although none of
the files proffered by the Government has been accessed since
late 2011, this is not so remote as to negate their probative
value.   *See Nanda*, 178 F.3d 1287, at *6 (allowing chat room
conversations even though the Government did not have dates when
the conversations occurred); *Roux*, 715 F.3d at 1023-1025
(permitting testimony of sexual assaults that occurred several
years in the past).   Further, the fact that many of the files
were created and searches were performed in 2011 negates Blank's
argument that they may have been planted on the computers by his
wife in an attempt to frame him.   Finally, the Government need
not prove that Blank actually accessed child pornography on
these computers because they are not charging him with such an
offense; instead, they are using Blank's *interest* in child
pornography to show motive and intent.   The same is true for the

51

proffered magazines and DVDs. *See Long*, 328 F.3d at 661 ("Rule
404(b)'s terminology 'other crimes, wrongs, or acts' includes
conduct that is neither criminal nor unlawful if it is relevant
to a consequential fact.  The other activity need not have
resulted in a charge or conviction; indeed, the defendant may
even have been acquitted of the conduct, or the conduct may have
been entirely lawful.") (internal quotation and citations
omitted); *Goff*, 155 Fed. App'x at 776 (allowing the introduction
of a pornographic magazine titled "Barely Legal").

Blank argues that allowing the proffered evidence is
unfairly prejudicial and would only "inflame" the jury.  ECF No.
88 at 1.  However, the electronic evidence and legal pornography
"d[o] not involve conduct any more sensational or disturbing
that the crimes with which he is charged."  *United States v.
Boyd*, 53 F.3d 631, 637 (4th Cir. 1995) (permitting evidence that
the defendant was a drug user in a distribution prosecution);
*see also United States v. Ebersbach,* 489 Fed. App'x. 635, 636
(4th Cir. 2012) (minimal risk of unfair prejudice from the
introduction of legal pornography materials in a child
pornography case, given the "introduction of numerous
pornographic images that formed the basis of the indictment")
*Tanguay*, 982 F. Supp. 2d at 125-26 ("[T]his court perceives
little risk that the stories, photographs, and bookmarks could

52

have caused any prejudice to Tanguay beyond that he already suffered—and unavoidably so—from the introduction of the child pornography itself.").

Although individual items of proffered evidence are not prejudicial, *cumulatively* the evidence may have a prejudicial effect.  Many courts have recognized the prejudicial effect of "voluminous" other acts evidence.  *See, e.g.*, *Nanda*, 178 F.3d 1287, at *6 ("Moreover, the relevance of the 404(b) evidence was not substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403, particularly considering that the district court limited the Government to twelve images out of the 700 that were found on Nanda's computer . . . ."); *United States v. Levinson*,504 Fed. App'x 824 828 (11th Cir. 2013) (court only permitted a "very small sampling" of the online chats); *Knope*, 655 F.3d at 659.

Here, the Government proposes to enter six pages of electronic history, four recordings, and a summary of 11 magazines and 90 DVDs.  Cumulatively, this may have a prejudicial effect by misleading the jury about the purpose of this trial.  Therefore, the Court ordered the Government to limit the evidence introduced in each category, and to proffer to the Court before seeking the admission of any of the

evidence.  *See Phipps*, 523 Fed. App'x at 500 (court only admitted three pornographic stories "out of thousands").

Accordingly, the Court denied Blank's motion to exclude pornographic videos and magazines, and granted in part and denied in part the Government's motion to introduce Rule 404(b) evidence.

III. Conclusion

For the reasons stated above, the Court denied Blank's motions to suppress evidence from Blank's Maryland residence, suppress evidence from the West Virginia cabin, suppress Blank's DNA sample, suppress evidence from Blank's cell phone, admit evidence under Rule 412, exclude jail recordings, dismiss for lack of jurisdiction, dismiss based on destroyed evidence, and exclude pornographic videos and magazines.  The Court deferred ruling until trial on the motion to exclude photos and other evidence obtained from Blank's cell phone in order to permit the Government to authenticate the cell phone.  The Court granted the Government's motion to preclude cross examination of the victim's sexual and mental health history and granted in part

54

and denied in part the Government's motion to admit evidence
under Rule 404(b).

_____6/30/15_____

Date

William D. Quarles, Jr.
United States District Judge